FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 24, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICOLE V., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:18-CV-05088-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 13, 17. Attorney Chad L. Hatfield represents Nicole V. (Plaintiff); Special Assistant United States Attorney Martha A. Boden represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on June 17, 2014, Tr. 85, alleging disability since September 1, 2003, Tr. 165, due to anxiety, bereavement/depression, auditory hallucinations, isolation, being overwhelmed, back pain, depressive disorder, personality disorder, and dysthymic disorder not otherwise specified, Tr. 190. The application was denied initially and

ORDER GRANTING DEFENDANT'S MOTION - 1

upon reconsideration. Tr. 112-15, 119-21. Administrative Law Judge (ALJ) Glenn G. Meyers held a hearing on May 24, 2016 and heard testimony from Plaintiff and vocational expert Kimberly S. Mullinax. Tr. 33-84. The ALJ issued an unfavorable decision on February 23, 2017. Tr. 15-28. The Appeals Council denied review on March 26, 2018. Tr. 1-5. The ALJ's February 23, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on May 25, 2018. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 27 years old at the date of application. Tr. 165. The highest grade she completed was the eighth. Tr. 191. Her reported work history includes the job of cashier. *Id*. When applying for benefits Plaintiff reported that she stopped working on September 1, 2003 because of her conditions. Tr. 190.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, she is found "disabled." 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 23, 2017 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from June 17, 2014 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 17, 2014, the date of application. Tr. 17.

At step two, the ALJ determined that Plaintiff had the following severe impairments: intellectual disability; depressive disorder; anxiety disorder; personality disorder; and substance abuse disorder (in remission). Tr. 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 17.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform work at all exertional levels with the following nonexertional limitations:

> [S]he is capable of engaging in unskilled, repetitive, routine tasks in 2-hour increments; she is able to have superficial incidental contact with public; she is capable of working in proximity to but not in coordination with co-workers; she is able to have occasional contact [with] supervisors; she will be 10 % off task at work but still meets minimum production requirements; and she will have 5 unscheduled absences from work per year.

Tr. 19. The ALJ found that Plaintiff had no past relevant work. Tr. 26.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of laundry worker 2, kitchen helper, and industrial cleaner. Tr. 27. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from June 17, 2014, through the date of the ALJ's decision. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh Plaintiff's symptom statements, (2) failing to properly weigh the medical opinions

in the record, and (3) failing to make a proper step five determination.

# DISCUSSION

## 1. Plaintiff's Symptom Statements

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. Specifically, the ALJ found that (1) "there are numerous inconsistencies that undermine the reliability and accuracy of her allegations," (2) Thomas Genthe, Ph.D. noted problems with Plaintiff's veracity during the 2011 evaluation, (3) mental examinations consistently showed Plaintiff had a normal mental functional capacity, (4) Plaintiff had a history of not following through with treatment recommendations, and (5) Plaintiff had a poor work history. Tr. 20-23.

### A. Inconsistencies

The ALJ's first reason for rejecting Plaintiff's symptom statements, that the record contained multiple inconsistencies in her reports, is supported by substantial evidence and meets the specific, clear and convincing standard.

In determining the reliability of a claimant's symptom statements, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the

claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ identified five of Plaintiff's allegations that were inconsistent in the record: (1) her reported meth use; (2) her reported learning problem; (3) her reported self-isolation; (4) her reported reasons for being incarcerated; and (5) her contradicting reports to providers/evaluators. Tr. 20-21.

First, the ALJ found that Plaintiff made inconsistent statements regarding her meth use. At the hearing, the ALJ asked Plaintiff about her meth use: "there was a certain period of your life, according to the papers in the file when you were a - - you were using methamphetamines a lot, is that true?" Tr. 46. Plaintiff replied, "Well, I wouldn't say a lot, I just tried it a few times," and stated that "it wasn't really my thing." *Id*. She stated that her last use was two to three years ago. *Id*. The ALJ asked how many times did she use in that period, and Plaintiff replied "I just tried it again like one time and then I didn't like it." *Id*. The ALJ concluded this hearing testimony was inconsistent with Plaintiff's reports to providers regarding her meth use. Tr. 20. In April of 2016, Plaintiff reported that she smoked methamphetamine daily, multiple times per day. Tr. 484. She reported her first use was at age eighteen and her last use was three years prior. *Id*. She reported "she was severely addicted, but stopped." Tr. 485. On March 4, 2015, Plaintiff presented to her counseling session and was described as "very agitated, Client[']s jaw was rolling side to side, her eyes were red and glassy, she appeared to be unable to catch her breath, and she moved constantly in her chair picking at her nails and rubbing her face." Tr. 551. The counselor noted Plaintiff "went back and forth between being contrite and being irritable with this therapist today." *Id*. This prompted a diagnosis of rule out drug use. *Id*. The ALJ found that these inconsistencies undermined Plaintiff's symptom statements. Tr. 20. The ALJ's finding is supported by substantial evidence.

Second, at the hearing, Plaintiff testified that she did not complete school due to problems learning. Tr. 46 ("my education is bad, I don't have really an

education at all."); Tr. 78 ("I was having difficult times understanding and paying attention. Extremely hard time."). However, in September of 2011, she reported to Dr. Genthe that she dropped out during her ninth-grade year, stating she was "being young and dumb." Tr. 335. She denied any history of significant learning difficulties and had never received special education services. *Id*. In March of 2016, Plaintiff identified meth use as a barrier to completing high school. Tr. 484. The ALJ found that this was inconsistent with her reported learning problems and undermined her symptom statements. Tr. 20. The ALJ's finding is supported by substantial evidence.

Third, Plaintiff testified that she isolated herself and did not interact with others outside of her family as a result of her anxiety. Tr. 43 ("I get anxiety when I'm in the store" because there are a lot of people). However, the ALJ notes, Plaintiff can attend her medical appointments without a chaperone. Tr. 21. Additionally, she stated her mother and some close friends were her social support. Tr. 497. She was sexually active in July of 2015. Tr. 363. Plaintiff testified that she received rides from a friend to go to another friend's house and other places. Tr. 48-51 (she broke her leg jumping off the truck after one of these rides to a friend's house). The ALJ found that this was inconsistent with her reported social anxiety and undermined her symptom statements. Tr. 21. The ALJ's finding is supported by substantial evidence.

Fourth, Plaintiff testified that she was in jail for six months after assaulting a police officer. Tr. 47. However, in March of 2016, she reported she was in jail for six months for a "domestic violence assault 4 charge." Tr. 491. Furthermore, prior to serving her six month sentence, she told a provider that she was reporting to jail because she was in trouble for having her pain pills loose in jail and was in trouble for contraband. Tr. 363. The ALJ found that these inconsistent reports of why she was incarcerated undermined her symptom statements. Tr. 21. The ALJ's finding is supported by substantial evidence.

Fifth, the ALJ found Plaintiff gave contradicting information to providers. Tr. 21. In May of 2014, during an evaluation for public benefits, Plaintiff "reported a history of psychotic symptoms, including sometimes hearing things and seeing things but I try to ignore it. Specifically, she reported hearing footsteps or her name called. She sees faces and shadows." Tr. 258. But in July of 2015, during an appointment to establish care with a nurse practitioner, she denied any bipolar or psychotic tendencies. Tr. 351. The ALJ found that these inconsistent reports of symptoms to providers undermined her symptom statements. The ALJ's finding is supported by substantial evidence.

Based on these five examples of inconsistencies in the record, the ALJ found that Plaintiff "has given misleading or false information repeatedly." Tr. 21. This finding meets the specific, clear and convincing standard, and is sufficient to support the ALJ's determination that Plaintiff's symptom statements were unreliable.

The ALJ also found that the record did not substantiate Plaintiff's allegations of severe social anxiety because "she admittedly rides the bus on her own, interacts with bus drivers, meets strangers and develops relationships, engages in sexual activity with others, and so forth." Tr. 21. In response, Plaintiff argues that the ALJ cannot rely on these kinds of daily activities to reject her testimony. ECF No. 13 at 14-15. The Ninth Circuit has stated that the ALJ should use caution when rejecting a Plaintiff's symptom statements based on her daily activities. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, as set forth above, the ALJ specifically identified statements by Plaintiff that are inconsistent. Therefore, the ALJ has met the specific, clear and convincing standard.

### B. Dr. Genthe's 2011 Evaluation

The second reason the ALJ rejected Plaintiff's symptom statements, that Dr. Genthe recorded a lack of veracity in his 2011 evaluation, is specific, clear and convincing. A claimant's failure to give maximum or consistent effort during

examinations is a reason to discredit a claimant's reports. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

On September 28, 2011, Dr. Genthe completed an evaluation at the request of the Washington Department of Social and Health Services (DSHS). Tr. 329-40. When addressing Plaintiff's attitude and general behavior, Dr. Genthe stated, "Her assessment results are of questionable veracity and is unlikely reflective of her true cognitive abilities. She was quick to give up and in all likelihood did not bring forth her best effort. Her mental status performance also evidenced lack of adequate effort." Tr. 335. Dr. Genthe administered the Personality Assessment Inventory (PAI), Tr. 338-39, and stated that Plaintiff's "response on the PAI are determined to be invalid due to a tendency to over report psychopathology on the test," Tr. 339. He further stated that Plaintiff "did not appear to be motived to provide her best effort on testing and her Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) scores are believed to underestimate her true intellectual abilities." Tr. 339. He gave her a rule out diagnosis of malingering. *Id*. The ALJ stated that he "agree[d] with Dr. Genthe's interpretation of the results regarding the reduced lack of validity, not only based on his observations and analysis but also based on my own review of the record regarding the reliability and accuracy of her statements related to the severity of her impairments during the relevant period." Tr. 22. The lack of effort on testing is supported by substantial evidence and meets the specific, clear and convincing standard.

### C. Mental Examinations

The ALJ's third reason for rejecting Plaintiff's symptom statements, they were not supported by the mental examinations in the record, is specific, clear and convincing. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). The Ninth Circuit has found that objective medical evidence is a "relevant factor in

determining the severity of the claimant's pain and its disabling effects," but a lack of supporting objective medical evidence cannot be the only reason for rejecting a claimant's symptoms statements. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that mental examinations consistently showed that Plaintiff had a relatively normal mental functional capacity. Tr. 22. The ALJ relied upon five mental examinations all showing normal results. *Id. citing* Tr. 319 (August 2014 evaluation where Plaintiff was oriented times three, had intact recent and remote memory, and had normal judgment and insight); Tr. 325 (September 2014 evaluation where Plaintiff was oriented times three, had intact recent and remote memory, and had normal judgment and insight); Tr. 352 (July 2015 treatment note showing normal mood, affect, behavior, judgment, and thought content); Tr. 393 (March 2015 treatment note showing Plaintiff was oriented times three, had intact recent and remote memory, and normal judgment and insight); Tr. 409 (January 2015 treatment note showing Plaintiff was oriented times three, had intact recent and remote memory, and normal judgment and insight). The ALJ concluded that if Plaintiff "had such severe mental functional problems as she alleged, one would expect consistent observations by medical professional irrespective of context." Tr. 22.

Plaintiff argues that the mental status examinations are consistently normal because Plaintiff did not attend appointments on the days she experienced increased symptoms. ECF No. 13 at 16. However, this amounts to a different interpretation of the evidence. The role of the district court is to determine whether the ALJ's findings were supported by substantial evidence. *Tackett*, 180 F.3d at 1097-98. Here, the ALJ's determination is supported by substantial evidence. Therefore, this meets the specific, clear and convincing standard.

### D. Failure to Follow Treatment

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that

her reported symptoms were inconsistent with her lack of treatment, is not specific, clear and convincing.

The ALJ found that despite alleging work preclusive symptoms in 2009 following the death of her father, Plaintiff was not evaluated until 2011 when seeking state public benefits and did not seek treatment until 2014. *Id*.

The Ninth Circuit has found that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) *citing Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Therefore, this reason fails to meet the specific, clear and convincing standard.

**E.   Poor Work History**

The ALJ's fifth reason for rejecting Plaintiff's symptom statements, that she had a poor work history, is specific, clear and convincing.

The ALJ may consider a claimant's poor work history in finding a claimant's symptom statements unreliable. *Thomas*, 278 F.3d at 959 (the claimant "ha[d] shown little propensity to work in her lifetime," and this was a specific, clear, and convincing reason for discounting the claimant's testimony).

Here, the ALJ concluded that Plaintiff's "poor work history shows that she does not want to work and that her impairments are not the underlying reason." Tr. 23. The ALJ premised this finding on her statements that her learning problems kept her from gaining employment prior to her alleged onset date. *Id*. However, as discussed above, Plaintiff's reports of learning problems are contradicted in the record. Therefore, the ALJ's determination that her lack of work is likely due to a lack of desire to work is a specific, clear and convincing reason.

In conclusion, the ALJ provided specific, clear and convincing reasons to reject Plaintiff's symptom statements. Any error resulting from the ALJ's fourth reason is harmless since the remaining reasons were legally sufficient. *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the

ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

**2. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Nora Marks, Ph.D. ECF No. 13 at 9-13.

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

On May 15, 2014, Dr. Marks examined Plaintiff and completed a Psychological/Psychiatric Evaluation for the Washington State Department of Social and Health Services (DSHS). Tr. 258-64. She diagnosed Plaintiff with anxiety disorder, major depressive disorder, dysthymic disorder, bereavement, personality disorder, and a rule out of an unknown substance abuse. Tr. 260. She opined that Plaintiff had a severe limitation in the ability to set realistic goals and plan independently. Tr. 261. Additionally, she opined that Plaintiff had a marked limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions, to perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances without special supervision, to make simple work-related decisions, to communicate and perform effectively in a work setting, to complete a normal work day and work week without interruptions from psychologically based symptoms, and to maintain appropriate behavior in a work setting. *Id.* She also opined that Plaintiff had a moderate limitation in four additional areas of functioning. *Id.*

On May 16, 2016, Dr. Marks completed a second Psychological/Psychiatric Evaluation form for DSHS following an April 14, 2016 examination. Tr. 512-23. She diagnosed Plaintiff with anxiety disorder, major depressive disorder, dysthymic disorder, bereavement, personality disorder, and a rule out other or unknown substance abuse. Tr. 260. Dr. Marks opined that Plaintiff had a severe limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions, to learn new tasks, and to set realistic goals and plan independently. Tr. 519. She opined that Plaintiff had marked limitations in five basic work activities and a moderate limitation in another five basic work activities. *Id.* She provided an overall disability rating of marked. *Id.*

The ALJ gave the opinions little weight for four reasons: (1) there were notable differences between the opinions without any explanation; (2) Dr. Marks did not review all the medical evidence; (3) Dr. Marks appeared to disregard her own observations; and (4) Dr. Marks relied on Plaintiff's unreliable self-reports.

Dr. Marks' opinions are contradicted by the opinions of the state agency medical examiners. Tr. 94-5, 107-08. Therefore, specific and legitimate is the appropriate standard.

### A. Differences Between the Evaluations

The ALJ's first reason for rejecting the opinions, that there were notable differences between the two opinions, is specific and legitimate. Here, by comparing the two opinions, the ALJ noted some internal inconsistencies. An ALJ may cite internal inconsistencies in evaluating a physician's report. *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

The ALJ noted that in 2014 Dr. Marks provided a none or mild difficulty with simple instruction and learning new tasks, yet in 2016 these were changed to moderate difficulty and severe difficulty. Tr. 24. Additionally, the ALJ noted that both reports included the same information about simple commands but they resulted in different ratings on the two opinions. Tr. 26. In the 2014 evaluation, Dr. Marks stated the following:

> [Plaintiff] was able to follow a simple written command. She correctly wrote her own name, the date of Christmas last year, and today's date when requested to do so. She had great difficulty copying two overlapping polygons. She neatly wrote a sentence when requested to do so that read "I hate my life". Instead of drawing three triangles, two squares, and a circle underneath it she only drew 3 circles. Her results suggest that she can follow simple written and spoken commands but she cannot follow more complex spoken demands. She was able to read and follow the directions on the Beck Anxiety Inventory and Beck Depression Inventory scales.

Tr. 260. Dr. Marks then opined that Plaintiff had a none/mild limitation in the abilities to understand, remember, and persist in tasks following very short and simple instructions and to learn new tasks. Tr. 261. In the 2016 evaluation, Dr. Marks stated the following:

> Previously, [Plaintiff] was able to follow a simple written command. She correctly wrote her own name, the date of Christmas last year, and today's date when requested to do so. She had great difficulty copying two overlapping polygons. She neatly wrote a sentence when requested to do so that read "I hate my life". Instead of drawing three triangles, two squares, and a circle underneath it she only drew 3 circles. Her results suggest that she can follow simple written and spoken commands but she cannot follow more complex spoken demands. She was able to read and follow the directions on the Beck Anxiety Inventory and Beck Depression Inventory scales although she read very slowly.

Tr. 518. These two paragraphs are remarkably similar. This makes it unclear if the second paragraph (from 2016) is a summary of Plaintiff's results from the first paragraph (from 2014) or if it represents new testing. The second paragraph (from 2016) could be referring back to the first paragraph (from 2014) because it is premised with "Previously." However, the additional observation at the end of the second paragraph, "although she read very slowly," could mean that the results are from new testing. In the 2016 evaluation, Dr. Marks states that "[d]ue to questions regarding the verity of previous test results, Ms. Vasquez was administered a full evaluation." *Id*. This could indicate that the prior paragraph was a summary of the 2014 evaluation. However, the ALJ appears to read the paragraphs from the 2014 and the 2016 evaluations as representing two separate series of testing: "Dr. Marks also should have explained the obvious discrepancy between the reports where both reports included the same information about simple commands but resulted in vastly different ratings regarding simple instructions and learning of [new] tasks." Tr. 25-26. Since it is unclear whether the paragraphs reproduced above represent a single test represented twice or two separate tests with similar scores, this Court will accept the ALJ's interpretation of the evidence and treat them as two separate tests. *See Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ).

Plaintiff argues that the change from "none or mild" to "severe" and "moderate" limitations in the abilities to follow simple instructions and learn new tasks is explained by the mere passing of two years between the evaluations and that the Beck Anxiety Inventory and Beck Depression Inventory showed different results. ECF No. 13 at 10. However, the passing of two years, an increase in the Beck Anxiety Inventory, and a decrease in the Beck Depression Inventory does not explain how the two evaluations can have a nearly identical section addressing her abilities to follow instructions and learn new tasks, yet have remarkably different

opined limitations. Therefore, the ALJ's reason, that there was a lack of explanation as to the different opinions in the 2014 and the 2016 evaluations, is supported by substantial evidence and meets the specific and legitimate standard.

### B. Review of Medical Evidence

The ALJ's second reason for rejecting the opinions, that Dr. Marks did not review all of the medical evidence, is specific and legitimate. "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 416.927(c)(2)(ii).

Here, the ALJ found that a "complete record review would have informed Dr. Marks that the claimant failed to abide by treatment recommendations and was discharged from treatment in 2015," that "Dr. Marks would have known that the claimant's physical treating provider repeatedly directed the claimant to see a psychologist or psychiatrist for treatment," and that "Dr. Marks would have known that the claimant's contrasting self-reports to providers as well as mostly normal mental examinations findings." Tr. 25. Additionally, the ALJ provided four examples of the inaccurate information that Dr. Marks considered. Tr. 25.

First, the ALJ found that Plaintiff reported to Dr. Marks in both evaluations that she heard voices, Tr. 260, 517, but she did not report hearing voices to her other providers in 2014, 2015, or 2016, Tr. 25 *citing* Tr. 282-84, 371-482. Plaintiff points out that there is evidence that she referred to hallucinations in some of the records the ALJ relies upon. ECF No. 13 at 11 *citing* Tr. 371, 376-77, 384-85, 390-91, 396, 401, 407. However, these citations are to a previous diagnosis of hallucinations and not to Plaintiff's complaints of current, ongoing symptoms. Tr. 371, 376-77, 384-85, 390-91, 396, 401, 407. The ALJ pointed out that Plaintiff actually denied psychotic tendencies in July of 2015. Tr. 25 *citing* Tr. 351. Therefore, this inconsistency in Plaintiff's reported symptoms identified by the ALJ is supported by substantial evidence.

Second, the ALJ found that Plaintiff denied drug abuse to Dr. Marks, but

ORDER GRANTING DEFENDANT'S MOTION - 16

reported to other providers a history of daily meth use and one provider included suspected continued drug use in her report. Tr. 25 *citing* Tr. 484-85, 511. Plaintiff denied any substance use or chemical dependency in both evaluations with Dr. Marks. Tr. 259, 517. Dr. Marks noted that Dr. Genthe's evaluation stated that Plaintiff went to jail for having someone else's drugs in her possession. *Id*. However, providers' records show that she smoked methamphetamine on a daily basis for some time and attributed drug use to the reason why she did not complete high school. Tr. 484. Additionally, in March of 2015, Lori Williams, M.Ed. suspected drug use in one of her treatment sessions. Tr. 511. The ALJ's finding that Dr. Marks did not review all the medical evidence, and was thus unaware of Plaintiff's inconsistent statements regarding drug use, is supported by substantial evidence.

Third, the ALJ found that Plaintiff lead Dr. Marks to believe that she could not function without help and that her severe anxiety made it difficult to be around people, yet treatment records and hearing testimony showed that she had close friends, was sexually active, attended classes, obtained rides from others, and worked and lived with others in jail. Tr. 25. Here, the ALJ found that Dr. Marks did not have all the relevant information regarding Plaintiff's activities because she did not review all the medical evidence. Plaintiff having close friends and being sexually active was recorded in the medical evidence. Tr. 25 *citing* Tr. 497, 351-52. But the remaining activities the ALJ identified were not in the medical evidence, but they were part of Plaintiff's testimony. Dr. Marks did not have access to Plaintiff's hearing testimony at the time of her opinion. Therefore, this reason by the ALJ is not supported by substantial evidence.

Fourth, the ALJ noted that Dr. Marks did not write much about Plaintiff's time in jail, but that she testified she worked in a kitchen with other inmates, shared a cell with three others, and worked as a janitor. Tr. 25. Again, the ALJ was focusing on how Dr. Marks' opinion was unreliable because she did not

review all the medical evidence. This information was not in the medical records but was part of Plaintiff's hearing testimony. This was not something that Dr. Marks could have ascertained from the medical evidence. Therefore, this does not support the ALJ's reason for rejecting Dr. Marks' opinions.

In conclusion, the ALJ provided three specific examples of how medical records not available to Dr. Marks demonstrated that the information Plaintiff provided to Dr. Marks during the evaluations was inaccurate. Therefore, the fact that Dr. Marks did not review all the medical evidence is a specific and legitimate reason to reject her opinions.

### C. Disregard Her Own Observations

The ALJ's third reason for rejecting the opinions, that Dr. Marks appeared to disregard her own observations, is specific and legitimate. The ALJ may cite internal inconsistencies in evaluating a physician's report. *Bayliss*, 427 F.3d at 1216. Specifically, the ALJ found that "Dr. Marks concluded there was no evidence of malingering, but Dr. Marks herself indicated that the claimant was not fully honest about her legal history," and that Dr. Marks failed to explain obvious discrepancies in Plaintiff's abilities to write a sentence, read, and follow directions, but not copy overlapping polygons. Tr. 25.

In the 2016 evaluation, Dr. Marks stated "It appears that [Plaintiff] was not entirely honest about her legal history." Tr. 517. When discussing the WAIS-IV, Dr. Marks stated that "lack of effort was suspected and test results were considered to have little validity." *Id*. Dr Marks stated that "[d]ue to questions regarding the verity of previous test results, [Plaintiff] was administered a full evaluation," and that "Malingering or lack of effort was not noted." Tr. 518. Dr. Marks interpreted the Wide Range Achievement Test – 4 as showing no signs of malingering. Tr. 523. These inconsistencies regarding Plaintiff's veracity in testing are supported by substantial evidence and met the specific, clear and convincing standard.

The alleged discrepancies in Plaintiff's ability to write a sentence, read,

follow directions, and copy overlapping polygons are discussed at length above. *See supra*. These support the ALJ's determination rejecting Dr. Marks' opinions to the extent that the different severity of limitations opined on the two evaluations are not supported in light of the same test results.

### D. Plaintiff's Self-Reports

The ALJ's fourth reason, that Dr. Marks relied on Plaintiff's unreliable self-reports, is specific and legitimate. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, the ALJ stated that "[i]t appears Dr. Marks merely accepted the claimant's unreliable self-reported information at both evaluations in spite of the contradicting or inconsistent indicators." Tr. 26. Specifically, the ALJ concluded that Dr. Marks relied on Plaintiff's symptom reports because she did not administer any malingering testing despite evidence to the contrary. *Id*. As discussed above, there was evidence of a lack of veracity on the part of Plaintiff, that Dr. Marks appeared to ignore. *See supra*. Here, the ALJ provided a basis for his conclusion that Dr. Marks relied on Plaintiff's unreliable self-report when forming her opinion. Therefore, this meets the specific and legitimate standard.

In conclusion, the ALJ has provided specific and legitimate reasons for rejecting the opinions of Dr. Marks.

### 3. Step Five

Plaintiff challenged the ALJ's step five determination by asserting that the hypothetical presented to the vocational expert was incomplete because it did not account for the limitations opined by Dr. Marks and those asserted by Plaintiff. ECF No. 13 at 19-20. As addressed above, the ALJ provided legally sufficient reasons for rejecting Plaintiff's symptom statements and Dr. Marks' opinions.

Therefore, the ALJ did not err in his step five determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant and the file shall be CLOSED**.

DATED June 24, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE